# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI SOUTHERN DIVISION

| | | |
|---|---|---|
| Marina Georgiyvna Ibrahim, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 07-3099-CV-S-FJG |
| | ) | |
| Alberto Gonzales, Attorney General, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Pending before the Court is Plaintiff's Motion for Temporary Restraining Order (Doc. No. 15) with Suggestions in Support (Doc. No. 16) and Defendants' Motion to Dismiss Plaintiff's Motion for Temporary Restraining Order and Complaint for Writ of Mandamus (Doc. No. 17) with Suggestions in Support (Doc. No. 18). Plaintiff petitions this Court for a hearing on her naturalization application and requests that this Court either enter an order naturalizing her or remand the case to the United States Citizenship and Immigration Services ("USCIS") with appropriate instructions as provided by the Immigration and Nationality Act, ("INA"), 8 U.S.C. § 1447(b). Defendants, however, moved to dismiss plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and opposed plaintiff's request for a Temporary Restraining Order ("TRO") contending that this Court lacks subject matter jurisdiction and venue, or that we remand this matter back to USCIS with no further instructions. For the reasons stated below, plaintiff's Motion for Temporary Restraining Order is **DENIED** and defendants' motion to dismiss is **DENIED IN PART, GRANTED IN PART**.

## I. BACKGROUND

This action arises from defendants' purported failure to make a determination on plaintiff's application for naturalization. Plaintiff Marina Georgiyvna Ibrahim was born in East Germany and currently holds Russian Citizenship. She received her Permanent Resident status as a result of a marriage to a US citizen. Plaintiff timely filed her Application for Naturalization on December 28, 2004, Form N-400. On April 26, 2005, USCIS sent plaintiff a notice to appear for an interview on both her I-751 and her N-400 applications. Immigration Officer Hermann interviewed plaintiff on June 2, 2005. Plaintiff successfully passed the English language and history and government portions of the examination.

Applicants seeking naturalization are subject to criminal and national security background checks to ensure they are eligible for naturalization and do not pose a risk to national security or public safety. (Canon Decl. ¶ 4, Doc. No. 18-4; see also Pub. L. No. 105-119, Nov. 26, 1997, 111 Stat. 2448, set forth in the historical and statutory notes to 8 U.S.C. § 1446). The required checks include a National Name Check Program administered by the FBI. Id. Following the events of September 11, 2001, the FBI is working through a backlog of name checks that has resulted in significant delays in processing some requests. (Canon Decl. ¶19-20). The FBI received plaintiff's name check request on USCIS on January 8, 2005, shortly after plaintiff filed her naturalization application. Plaintiff's name check has undergone an initial electronic check and a secondary manual name search. However, because the check is identified as possibly being the subject of one or more FBI records, it is currently in a processing queue to be reviewed by an analyst who must retrieve and review the FBI records, which may be located in an FBI field office or overseas legal attache office. (Cannon Decl. ¶¶ 13-15, 27,

2

Doc. No. 18-4). The USCIS has advised plaintiff it is unable to adjudicate her application for naturalization until the name check is completed.

As a result of the delay, plaintiff filed the present action on April 2, 2007 for a hearing on her application or for an order of mandamus. Plaintiff then filed a Motion for a Temporary Restraining Order on September 21, 2007 requesting that this Court expedite her application because (1) two years have passed since plaintiff had her interview on June 2, 2005 and (2) plaintiff's daughter will not be able to derive U.S. citizenship from plaintiff once plaintiff's daughter turns 18-years-old on November 12, 2007.

## II. LEGAL STANDARDS

### A.     Motion to Dismiss

Defendants argue this case should be dismissed pursuant to Rule 12(b)(1) because this Court lacks subject matter jurisdiction and venue is improper under 8. U.S.C. § 1447(b) In the alternative, if this Court finds jurisdiction, defendants request an Order remanding the case back to USCIS for further adjudication. Federal courts are of limited jurisdiction and "have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." Marine Equip. Mgmt. Co. v. United States, 4 F.3d 643, 646 (8th Cir. 1993)(citing Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541, 106 S. Ct. 1326, 89 L. Ed. 2d 501 (1986); see also Godfrey v. Pulitzer Pub. Co., 161 F.3d 1137, 1141 (8th Cir. 1998). The party asserting jurisdiction bears the burden of establishing that a cause lies within the federal court's limited jurisdiction. Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994). "The first and fundamental question presented by every case brought to the federal courts is

3

whether it has jurisdiction to hear a case." Bender, 475 U.S. at 541. "[J]udicial deference

to the Executive Branch is especially appropriate in the immigration context where officials

exercise especially sensitive political functions that implicate questions of foreign relations."

INS v. Aguirre-Aguirre, 526 U.S. 415, 425, 119 S. Ct. 1439, 143 L. Ed. 2d (1999).

## B.      Temporary Restraining Order

Plaintiff requests a temporary restraining order which compels respondents and their

subordinates to comply with their own policies.  In determining whether a party is entitled

to a preliminary injunction, the Eighth Circuit applies the following four-factor test: (1) the

probability that the movant will succeed on the merits; (2) the threat of irreparable harm;

(3) the balance between the harm and the injury that granting the injunction will inflict on

the parties; and (4) the public interest.  Dataphase Sys. Inc. v. CL Sys., Inc., 640 F.2d 109

(8th Cir. 1981).

## III. DISCUSSION

## A.      Subject Matter Jurisdiction and Venue

*1. Subject Matter Jurisdiction*

Before reaching the merits of plaintiff's claim, the Court must first determine whether

subject matter jurisdiction exists over this matter.  Plaintiff asserts jurisdiction exists

pursuant to § 1447(b).  Section 1447(b) states the following:

> Request for hearing before district court.  If there is a failure to make a
> determination under section 335 before the end of the 120-day period after
> the date on which the examination is conducted under such section, the
> applicant may apply to the United States district court for the district in which
> the applicant resides for a hearing on the matter.  Such court has jurisdiction
> over the matter and may either determine the matter or remand the matter,
> with appropriate instructions, to the Service to determine the matter.

Plaintiff asserts that more than 120 days have passed since plaintiff's interview on June 2, 2005; thus this Court has jurisdiction to hear this matter. Plaintiff argues that the "examination" in question is the applicant interview. Plaintiff argues that the interview triggered the running of the 120-day period, giving this Court jurisdiction over this matter. *Id.* A clear majority of U.S. District Courts agree with plaintiff's position including courts in this district. See, e.g., Patel v. Gonzales, 2007 U.S. Dist. Lexis 7081, 2007 WL 2811470 (W.D. Mo. September 24, 2007); Andron, v. Gonzales, 487 F. Supp. 2d 1089 (W.D. Mo. May 21, 2007); Manzoor v. Chertoff, 472 F. Supp. 2d 801, 807 (E.D. Va. 2007); Essa v. U.S. Citizenshp and Immigration Services, 2005 U.S. Dist. LEXIS 38803, 2005 WL 3440827 (D. Minn. Dec. 14, 2005); Khelifa v. Chertoff, 433 F. Supp. 2d 836, 840-41 (E.D. Mich.2006); El-Daour v. Chertoff, 417 F. Supp. 2d 679, 681-82 (W.D. Pa. 2005); Hussein v. Gonzales, 474 F. Supp. 2d 1265, 1268 (M.D. Fla. 2007); Castracani v. Chertoff, 377 F. Supp. 2d 71 (D.D.C. 2005); Shalabi v. Gonzales, 2006 U.S. Dist. LEXIS 77096, 2006 WL 3032413 (E.D. Mo. Oct. 23, 2006); Shalan v. Chertoff, 2006 U.S. Dist. LEXIS 253, 2006 WL 42143 (D. Mass. Jan. 6, 2006). Plaintiff suggests the majority view is correct because the plain language of the statute confers jurisdiction to U.S. District Courts for applications beyond the 120-day processing time and because Congress specifically intended to provide a remedy to applicants whose applications are delayed.

Defendants respond that "examination" includes the requirement of a full criminal background check before naturalization can be determined. See Danilov v. Aguirre, 370 F. Supp.2d 441, 443-44 (E.D. Va. 2005) (finding jurisdiction did not vest until completion of FBI investigation). Several courts have found that the plain language in § 1447(b) requiring the 120-day period to begin on "the date on which the examination is conducted"

5

suggests a specific event rather than a process. See Shalabi, 2006 WL 3032413 *4; *El-Daour*, 417 F. Supp.2d at 681-83; Khelfia, 433 F. Supp.2d at 841). Defendants suggest that the Court lacks jurisdiction because the 120-day period does not start until that entire process is complete, which includes plaintiff's pending FBI background check.

The INA does not define the term "examination." While the Eighth Circuit has not interpreted that statutory language, a consensus as to the meaning of "examination" as used in § 1447(b) appears to be forming in the district courts. Thus, the Court agrees with plaintiff. "Without a set date for the examination, there would be no way to measure the 120 days, rendering that section meaningless." Patel, 2007 U.S. Dist. LEXIS 70801, *7-8. Second, the statutory distinction between the investigation and the examination suggests they are "discrete events under the statutory scheme." Id. quoting Shalabi, 2006 WL 3032413 *4 (internal quotations omitted). Finally, the regulations promulgated by the USCIS make it clear that the investigation and the examination are separate and that the term "examination" means an individual event. Under 8 C.F.R. § 335.2(a), "each applicant shall appear in person before a Service officer designated to conduct examinations pursuant to § 332.l of this chapter." See also 8 C.F.R. § 335.2(b).

The language at issue has a plain and unambiguous meaning with respect to the precise question at issue. See United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 240 (1989). If the intent of Congress is clear, the Court "must give effect to the unambiguously expressed intent of Congress." Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984). "When reviewing a federal agency's interpretation of a federal statute, a federal court must defer to the agency's interpretation only if it finds that the agency's interpretation is consistent with the plain language of the

6

statute or represents a reasonable interpretation of an ambiguous statute." United States ex rel. Zissler v. Regents of Univ. of Minnesota, 154 F.3d 870, 897 (8th Cir. 1998), citing Chevron, 467 U.S. at 842-45. Whether the meaning of statutory language is plain or ambiguous is determined by referring to the language itself, the context in which it is used, and the broader context of the statute as a whole. Robinson v. Shell Oil Co., 519 U.S. 337, 340-41(1997) (citations omitted). The term "examination" as used in § 1447(b) clearly refers to the applicant's initial examination. The statute and federal regulations plainly indicate that the "examination" occurs on an identifiable date with particular components: tests on proficiency in the English language and understanding of U.S. history and government. 8 C.F.R. § 335.2 (c). The reference to a particular date indicates a single, specific event–the date of plaintiff's initial examination–rather than a process. Moreover, the date of her exam is the only date an applicant could reasonably be expected to "appear" before a USCIS officer. 8 C.F.R. § 335.2(a). Denying an applicant his or her remedy for delay because the government asserts general objections that the Name Check process is elaborate and unpredictable would clearly undermine the Congressional objectives of reducing waiting times for naturalization applications and providing applicants a choice as to the forum which will adjudicate their applications. Denying subject matter jurisdiction would render § 1447(b) superfluous. See Silebi De Donado v. Swacina, 2007 U.S. Dist. LEXIS 34961, 2007 WL 1417600 (S.D. Fla. May 14, 2007).

The Court acknowledges that language in § 1446 and § 1447(b) is not completely reconciled. However, any indication that the "examination" means more than the examination of the applicant is not enough to render § 1447(b) redundant by eliminating an applicant's ability to seek redress in U.S. District Courts for delayed application

7

decisions which was the clear intent of Congress.  Accordingly, § 1447(b) gives this Court subject matter jurisdiction over plaintiff's claim because more than 120 days have passed since plaintiff's examination on June 2, 2005.

      *2.    Venue*

Defendants, however, also object to this Court assuming jurisdiction over plaintiff's case because § 1447(b) requires that the applicant "apply to the United States district court for the district in which the applicant resides."  Defendant states that plaintiff no longer lives in Missouri and recently moved to New Rochelle, New York.  Thus, defendant argues this case should be transferred to the Southern District of New York where plaintiff resides because improper venue exists in the Western District of Missouri where plaintiff no longer resides.  Other than the statute, defendants do not cite any authority for transferring this matter to another district.

Plaintiff replies that at the time she filed her Complaint for mandamus on April 2, 2007, plaintiff resided in the Western District of Missouri.  Plaintiff asserts that if defendants want to move this case to New York, then they should file a motion to change venue and the motion should be evaluated under 28 U.S.C. § 1404(a).  Section 1404(a) provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Plaintiff further states that a motion for change of venue is properly granted when the balance weighs strongly in favor of transfer.  Plaintiff also notes that transferring venue would only delay the process further and that no justification exists to transfer the case.

The Court agrees with plaintiff that venue properly existed in this district at the time plaintiff filed her Complaint and that it would be inefficient to transfer this case at this stage.

8

Section 1447(b) states that an applicant must apply to the district court for the district in which he or she resides to conduct a hearing.  Plaintiff properly followed the language in § 1447(b)  when she filed her complaint on April 2, 2007 in the Western District of Missouri where she resided at the time.  Although plaintiff subsequently moved to New Rochelle, New York, which is located in the Southern District of New York, it does not necessarily mean that this Court is required to transfer this case to plaintiff's current district.  If the language of § 1447(b) were enacted to mean that courts must transfer cases to another district whenever the applicant moves, then for an applicant who moves frequently, her case would be transferred each time she moved to another district.

In addition, following defendants' approach would further delay plaintiff's application, thereby defeating the purpose of §1447(b).  Congress explicitly outlined the policy objectives underlying § 1447(b): (1) reducing waiting times for naturalization applications; (2) reducing the burdens on the courts and immigration agencies; (3) facilitating consistent and fair naturalization decisions; and (4) providing applicants a choice as to the forum in which their applications were adjudicated.  United States v. Hovsepian, 359 F.3d 1144, 1163-64 (9th Cir. 2004).   Given that plaintiff initially filed her case in the proper district and then later moved to another district, transferring plaintiff's case to the Southern District of New York would undermine the policy objectives that Congress intended in enacting § 1447(b).

Further, the Court concludes that most of the facts underlying plaintiff's Complaint have occurred in Missouri not New York.  For instance, plaintiff's application was filed in Missouri, plaintiff resided in Missouri for a majority of the time in which her application was pending, and the USCIS office in Missouri has handled the processing of plaintiff's

9

naturalization application for the past two years.  Thus, the Court finds that jurisdiction and

venue is proper in the Western District of Missouri.  Therefore, for the foregoing reasons,

defendants' motion to dismiss is hereby **DENIED**.[1]  The Court will address defendants'

alternative request to remand the matter back to USCIS below.

## B.     Plaintiff's Motion for Temporary Restraining Order (Doc. No. 15)

Plaintiff is requesting that this Court order USCIS to expedite her application before

plaintiff's daughter turns 18-years-old on November 12, 2007.   Plaintiff has a 17-year-old

daughter who will derive automatic citizenship from her mother once her mother is sworn

in as a U.S. citizen.  However, when her daughter turns 18 on November 12, 2007, she will

not be able to derive citizenship from her mother.  Rather, plaintiff's daughter will have to

file her own application for naturalization and wait for her citizenship to be processed.

Plaintiff states her application has been pending since her daughter was 16-years-old and

that there is no reason for further delay as she satisfied all the requirements necessary for

U.S. Citizenship.   Defendants respond that plaintiff's daughter is eligible to file for

naturalization on her own behalf when she turns 18 and that plaintiff's application should

not be expedited just because plaintiff does not want her daughter to have to file her own

---

[1]Defendants also assert that plaintiff's Complaint should be dismissed entirely because this Court has no subject matter jurisdiction under the Administrative Procedure Act ("APA") nor the Mandamus Act.  Defendants argue this Court should dismiss plaintiff's Complaint because (1) this Court cannot compel the agency, USCIS, to act within a certain time period under the APA when the agency is not compelled by law to act within a certain time period and (2) mandamus relief under 28 U.S.C. 1361 is an "extraordinary remedy" used only to compel "the performance of a clear non-discretionary duty" and there is no clear non-discretionary duty here.   Defendants further argue that there is no legal duty imposed on the FBI in naturalization cases. Because the Court finds that jurisdiction is proper under § 1447(b, defendants' arguments regarding jurisdiction under the APA and the Mandamus Act are moot.

10

application for naturalization.

Lastly, plaintiff argues injunctive relief should be granted in this case because her urgent circumstances satisfies the four-factor test.

*1.      Likelihood of Success on the Merits*

Plaintiff asserts she has shown that defendants have unreasonably delayed her naturalization application beyond 120 days; thus plaintiff is entitled to relief under § 1447(b). Defendants respond that this Court has no jurisdiction to order the FBI to complete its background check within a specified amount of time; therefore plaintiff will not succeed on the merits. Defendants note that this does not mean that plaintiff will not become a U.S. citizen; it only means that plaintiff will simply have to wait her turn. Given that over two years have passed since plaintiff's interview, it is clear that the government has delayed; thus plaintiff is likely to succeed on the merits.

*2.      Threat of Irreparable Harm*

Plaintiff contends that she will suffer substantial and irreparable harm if her application is not expedited because her daughter will be placed in an uncertain situation. Plaintiff argues that USCIS set forth a policy that indicated it would expedite a name check in certain cases. On February 20, 2007, the USCIS sent out an update stating it was no longer routinely requesting the FBI expedite a name check when the only reason for the request is that a mandamus is filed in the case. (See Exhibit A, Doc No. 16-2). The USCIS, however, has set out exceptions to this rule for the following cases:

1.      military deployment
2.      age-out cases not covered under the Child Status Protection Act, and applications affected by sunset provisions such as diversity visas
3.      significant and compelling reasons, such as critical medical conditions, and

4.      loss of social security benefits or other subsistence at the discretion
         of the USCIS District Director

Plaintiff argues her case is an age-out case because her daughter will age-out of acquiring automatic citizenship on November 12, 2007 when she turns 18; thus plaintiff contends she qualifies for an expedited name check.  Plaintiff states she contacted USCIS to inquire about the expedited name check in an age-out case and advised USCIS of her urgent situation.  On September 20, 2007, plaintiff states she received an email from USCIS' Regional Counsel stating that she had not realized the urgency of the situation and would inquire about an expedited name check.  However, on September 21, 2007, USCIS advised it would not expedite the name check in this case.  Plaintiff states USCIS' unwillingness to follow their own policy will result in hardship to plaintiff.

Defendants respond that there is no threat of irreparable harm to plaintiff and that the threat of harm which is the subject of the TRO is essentially that of plaintiff's daughter, who is not a named plaintiff nor does her daughter have standing to pursue an injunction. Defendants further respond that while USCIS' new policy regarding name checks allows for name checks to be expedited in certain cases, the purpose of the policy was that name checks would no longer be expedited "when the only reason for the request is that a mandamus is filed in the case."  Defendants state this language is the by-product of many immigration attorneys filing mandamus actions throughout the country in an attempt to force their clients to the front of the line.  Defendants view plaintiff's TRO as merely an attempt to move ahead of other applicants.  Defendants also note that only a limited number of applications can be expedited because too many expedited applications would undermine the process.  Additionally, defendants assert that Congress has not provided

12

any timetable for the FBI to complete its name check in the immigration process.

The Court agrees with plaintiff that plaintiff and her daughter will suffer irreparable harm if plaintiff's application is delayed further. As to USCIS' name check policy, the Court concludes it is not in a position to order USCIS to follow its own policy. It is, however, unclear from defendants' response why plaintiff fails to satisfy the age-out provision contained within the policy. Defendants only stated that it is not feasible to expedite many applications and that plaintiff is using its request for a TRO to move to the front of the line. This response does not adequately address plaintiff's argument that her case meets the age-out provision because her daughter will be turning 18. While the Court believes it is not in a position to determine whether plaintiff's case satisfies the age-out provision of USCIS' policy, the Court finds that USCIS should provide an adequate response to plaintiff explaining why plaintiff's case specifically fails to meet the age-out provision. Defendants must provide a response to plaintiff by **Tuesday, October 30, 2007**.

      3.     *Balance of Hardships*

Plaintiff states there is no plausible interest that USCIS can claim in preventing plaintiff's daughter from deriving citizenship. Defendants argue it is rather a hardship for the agencies involved for Courts to force them to take emergency action with limited time and resources. The Court agrees that the hardships on plaintiff are significant. Plaintiff's application has been delayed for over two years since her examination on June 2, 2007. Delaying plaintiff's application further will cause greater hardship to plaintiff and her family. Thus, this factors weighs in favor of injunctive relief.

      4.     *Public Interest*

Plaintiff contends that the public has an interest in seeing that a child stays with her

13

mother in the same country.  Defendants assert it is actually in the public's interest to refrain from rushing background investigations because the safety of U.S. citizens would be compromised.  The Court agrees that it must tread lightly when its actions implicate matters of foreign relations and national security and that safety of the public outweighs the public interest in keeping plaintiff's daughter in the United States.  Further, there is no indication that plaintiff's daughter will be deported once she turns 18.  Rather, plaintiff's daughter has lawful permanent residency in this country and may apply for citizenship on her own.  While that is an inconvenience, it is certainly not a threat to the public.  Thus, this factor weighs against injunctive relief.

Plaintiff's request for injunctive relief is inappropriate.  Plaintiff requests a temporary restraining order which compels respondents and their subordinates to comply with their own policies.  Rather, the proper inquiry here is to determine whether to grant plaintiff's naturalization application or remand the matter pursuant to §1447(b).  Because the Court finds below that remand is a more appropriate action in this case, the Court **DENIES** plaintiff's motion for a temporary restraining order (Doc. No. 16).

### C.     Remand

Under § 1447(b), the court has the discretion to hold a hearing on the application and either determine the matter or remand the matter with appropriate instructions to USCIS.  Plaintiff requests that the Court conduct a hearing on her application for naturalization and issue a TRO or remand the matter with specific instructions to approve the application and administer the oath.  Defendants ask that the Court decline to intercede and remand the matter back to the USCIS without imposed deadlines.  Defendants argue

14

that if the Court chooses to determine the matter, it will still need a complete FBI background check before it can make a decision on plaintiff's naturalization application. Daami v. Gonzales, 2006 WL 1457862 at *6 (D. N.J. May 22, 2006) (finding court in same position as the agency given the statutory prohibition on adjudicating an application without a complete investigation), and Manzoor, 472 F. Supp. 2d at 808-09 (finding itself ill equipped to conduct background checks and recognizing the agency's ability to interpret the results of such checks and follow up appropriately).

Further, defendants assert that this Court has no jurisdiction to order an expedited name check. Although § 1447(b) does not directly reference the FBI, this Court can still set a deadline by which the USCIS must finish processing plaintiff's application. Otherwise, "it makes no sense to read the statute to state that the court cannot directly instruct the FBI to do what the court could indirectly require the FBI to do through 'appropriate instructions'." Aman v. Gonzales, , 2007 U.S. Dist. LEXIS 66598, *13-14, 2007 WL 2694820, * 5 (D. Colo. 2007). Thus, "whether the court instructs the FBI directly or indirectly through an order to the USCIS is a question of form, not substance." Id. To hold otherwise would be to "gut the court's discretion under section 1447(b)." Id.

Plaintiff's application has been unreasonably delayed for over two years. Plaintiff's application has been pending since her examination on June 2, 2005 and her name check has been pending since January 8, 2005. Based on this delay, it does not appear that plaintiff's application will be finalized in the near future. Further, given the time that the FBI has had to review plaintiff's file and conduct an investigation, there is little danger of any rushed determination. Because this Court is ill-equipped to conduct an background checks, remand is appropriate. The Court hereby **REMANDS** this matter to the USCIS with

15

instructions to make a decision on plaintiff's application within thirty (30) days of receiving

a completed background check from the FBI and that the FBI complete the name check

process within sixty (60) days.

## IV.    CONCLUSION

Based on the foregoing reasons, it is therefore ORDERED:

1.    Plaintiff's Motion for Temporary Restraining Order (Doc. No. 15) is **DENIED**.

2.    Defendants' Motion to Dismiss Plaintiff's Motion for Temporary Restraining Order and Complaint for Writ of Mandamus (Doc. No. 17) is **DENIED IN PART** and **GRANTED IN PART**.  This case is remanded to USCIS with the following instructions: (1) the FBI shall complete plaintiff's background security check and report the results to the USCIS within sixty days of the date of this order; and (2) the USCIS shall issue a decision on plaintiff's pending naturalization application within thirty days of receipt of the results of the FBI security check.

**IT IS SO ORDERED.**


Date:  10/18/07                              **S/ FERNANDO J. GAITAN**, **JR.**
Kansas City, Missouri                        Fernando J. Gaitan, Jr.
                                             Chief United States District Judge

16